571 P.2d 675

**BEST FERTILIZERS OF ARIZONA, INC., a Delaware Corporation, Appellant,**

v.

**V. L. BURNS, Appellee.**

**No. 2 CA–CIV 2135.**

Court of Appeals of Arizona, Division 2.

Feb. 1, 1977.

Rehearing Denied March 29, 1977.

Review Granted April 26, 1977.

Karman & Ishamel, P. C. by Howard H. Karman, Casa Grande, for appellant.

Stanfield, McCarville, Coxon, Cole & Fitzgibbons by David A. Fitzgibbons, Jr., Casa Grande, for appellee.

OPINION

HATHAWAY, Judge.

This is an appeal involving two mortgages. The trial court found that appellee's mortgage was senior to that of appellant and entered judgment foreclosing appellee's mortgage. Appellant challenges the foreclosure contending that the senior note has been discharged and the mortgage thereby released.

Appellee's note and mortgage originated when Marcus Vanderslice gave them as a purchase money note and mortgage to Mr. and Mrs. Dees in exchange for title to real property. Mr. Vanderslice later sold the property to McFaddin Ranches subject to the Dees mortgage. McFaddin Ranches did not assume the mortgage but made payments on it. In 1970, McFaddin Ranches ceased making payments. Marcus Vanderslice then, in order to avoid default, paid the balance of the money owed to the Dees who then endorsed and assigned the note and mortgage to Mr. Vanderslice. Appellant contends that this transaction resulted in discharge of the note and release of the mortgage. Mr. Vanderslice, in consideration of the payment of $35,000, endorsed the note and assigned the mortgage to Burns, the appellee. Burns filed an action seeking judgment on the note and foreclosure of the mortgage. Best Fertilizers, holder of a note and mortgage given to it by McFaddin Ranches and encumbering the same property as appellee's mortgage, coun-

terclaimed for judgment on the note and foreclosure of its mortgage. The trial court granted Burns' motion for summary judgment and Best Fertilizers appealed.

■ We have concluded that the trial court's judgment in favor of appellee must be reversed. Appellee's mortgage was released when the Dees transferred it back to Vanderslice, the original mortgagor. The note signed by Vanderslice was a negotiable instrument within A.R.S. § 44–2504(A). It was discharged when Mr. Vanderslice reacquired it. A.R.S. § 44–2568(C)(1). Appellee argues that these statutes, part of the Uniform Commercial Code as enacted in Arizona, are inapplicable to his note because the note is secured by a real estate mortgage. Albeit the Code does not apply to security interests in realty, the promissory note is not a security interest in realty. Under A.R.S. § 44–2505(A)(5), a note does not cease to be negotiable even though it is secured by a mortgage. Furthermore, A.R.S. § 44–2512(A) states that "[t]he negotiability of an instrument is not affected by: * * * 2. A statement that collateral has been given to secure obligations . . . .."

In *Capital Investors Co. v. Executors of Estate of Morrison,* 484 F.2d 1157, 1160 (4th Cir. 1973), the court held:

> " . . . the transferability of such notes, as well as the rights flowing from such transfers, are to be determined by the legal principles unique to negotiable instruments. This is so, though the notes are secured by a real estate mortgage."

When Mr. Vanderslice purchased the note and mortgage from the Dees he became the holder of his own note and mortgage bringing the transaction within A.R.S. § 44–2568(C)(1). "The liability of all parties is discharged when any party who has himself no right of action or recourse on the instrument: 1. Reacquires the instrument in his own right." Mr. Vanderslice had no right of action or recourse on the instrument. He was the only person liable for payment. McFaddin Ranches, his grantee, had been making payments but had not assumed the mortgage. Mr. Vanderslice therefore had no right to demand payment from McFaddin Ranches. This result is in accord with pre-existing common law relating to mortgages. Osborne, Handbook on the Law of Mortgages 554 (2d Ed. 1970).

■ Once the note is discharged, the mortgage is released. The mortgage ceases to be a lien upon the property because there can be no mortgage unless there is a debt. Our Supreme Court has held that "The very essence of a mortgage is a subsisting obligation to pay. It matters not whether the debt existed before or was created by the transaction in question. But debt there must be." *Merryweather v. Pendleton,* 90 Ariz. 219, 367 P.2d 251 (1961); *Charter Gas Engine Co. v. Entrekin,* 30 Ariz. 341, 246 P. 1038 (1926). Also, a mortgage has been found to be "incident to the note and inseparable therefrom" so that " 'A mortgage, as distinct from the debt it secures, is not a thing of value nor a fit subject of transfer . . . .' " *Hill v. Favour,* 52 Ariz. 561, 567, 84 P.2d 575, 578 (1938). Among the "gems" and "free" offerings of the late Professor Chester Smith of the University of Arizona College of Law was the following analogy. The note is the cow and the mortgage the tail. The cow can survive without a tail, but the tail cannot survive without the cow.

Reversed and remanded for proceedings consistent with our holding that appellee's note was discharged and the accompanying mortgage released.

HOWARD, C. J., concurs.

SCHROEDER, Judge, dissenting:

The majority reaches a harsh result which is not in accordance with what I believe to be the principles of law applicable to this case. Mr. Vanderslice as the original mortgagor sold the property to McFaddin Ranches and McFaddin was to make the payments on the mortgage to Dees. McFaddin did make the payments for a time but then defaulted. Because Vanderslice remained liable on the mortgage, he paid off the underlying debt in an effort to protect the property and his position.

180

The majority holds that having paid the mortgage, he accomplished neither objective and was legally entitled to nothing.

In my opinion, when Vanderslice sold the property to McFaddin, he in effect became a surety and ceased being the primary obligor. When Vanderslice paid off the debt, he became subrogated as to the rights of the creditor, Dees. Vanderslice therefore had rights senior to the junior mortgage of appellant. As Vanderslice's successor in interest, the appellee had similar rights which were properly upheld by the trial court. Osborne states these principles as follows:

"Thus in the law of mortgages, a mortgagor who has sold the property to an assuming grantee and then has had to pay is entitled to be subrogated to all rights of the mortgage creditor, both against the assuming grantee personally and in the mortgaged property in his hands. Similarly, if the sale is subject to the mortgage and the mortgagor is forced to pay, he gets subrogation to the creditor's security interest in the property now owned by the grantee, it being regarded as the principal and the mortgagor, as to it, surety." Osborne, Mortgages, § 278, p. 563 (2nd ed. 1970).

I recognize that today's decision is based upon the fact that the underlying debt in this case was a promissory note. The majority in effect holds that the statutes applicable to negotiable instruments abrogate the suretyship principles otherwise applicable to mortgages. I recognize further that there is considerable authority for such a conclusion in cases holding that suretyship principles do not apply with respect to extension agreements of promissory notes secured by mortgages. See e. g., *Mortgage Guarantee Company v. Chotiner*, 8 Cal.2d 110, 64 P.2d 138 (1936). See also, Osborne, supra, § 271. However, Osborne states in the heading to that section that such an abrogation rule has been "universally criticized." Today's decision is contrary to the only case called to our attention by the parties involving a situation similar to that presented here. *Mueller v. Jagerson Fuel Company*, 203 Wis. 453, 233 N.W. 633 (1930).

If in fact there had never been any obligation on the part of McFaddin to pay the mortgage, and the obligation had remained solely that of Vanderslice, the principles relied on by the majority might well apply. Here, however, even though McFaddin did not formally assume the mortgage, it did take the property subject to the mortgage and did make payments on it. There is no contention that in making the sale to McFaddin, Vanderslice did anything other than rely upon McFaddin's payment of the mortgage as part of the consideration for the sale. In those circumstances, the principles of suretyship should apply in order to avoid a wholly inequitable and very substantial loss to appellee coupled with a windfall for the appellant whose security interest was from its inception undeniably junior.